All rise. The United States for the Court of Appeals of the Ninth Circuit is now in session. Please be seated. Good afternoon, ladies and gentlemen. This is the time set for a re-hearing on Bonk in the case of United States v. Collazo. You may proceed. Good afternoon. My name is Ben Coleman. I'll be arguing on behalf of the appellants. The court should adopt the conjunctive test for determining drug type and drug quantity in an 846 case. That is a standard that has been articulated in the sentencing guidelines and repeatedly approved by Congress over the course of three decades, as recently as 2015. It's a fair and balanced test. It's consistent with traditional conspiracy law. It avoids grossly disproportionate sentences for defendants while also affording the government flexibility to vigorously enforce the federal drug laws. The amicus in this case argues for a more favorable instruction, I think, for defendants, that they have to knowingly and intentionally have knowledge of the amount and type of drugs involved in the conspiracy. You're not advocating for that position? We agree with the amicus to the extent that we think the court should fortify its mens rea requirements for both substantive and conspiratorial liability in line with Judge Fletcher's concurrence in Jefferson and in line with the Supreme Court's decision in Rehave. Well, if that were so, then we would not be giving a Pinkerton instruction. We would be giving a different instruction. And so I realize this all pops up late in the case and nobody gets to brief it, but I'm trying to figure out what you want. Right. In an ideal world, we think the court should adopt Judge Fletcher's concurrence in Jefferson. That would then mean both for substantive liability and conspiratorial liability, there would be a mens rea as a type and quantity. Let me ask you a follow-up to that. If let's assume that the court did not adopt Judge Fletcher's concurrence, would you then still argue that the knowing and intentional standard applied to conspiracy, given the agreement nature of the crime? I think that's a tougher argument. That's why I'm asking. And I know that the amicus has taken that position, but to be frank, I think there's a Supreme Court case called FIOLA, United States versus FIOLA, which makes that argument much tougher. Certainly the court can try to distinguish FIOLA, and again we agree with Judge Fletcher's concurrence as to the substantive offense. So just so I can summarize your position, your position is that we can only get to the knowing and intentional instruction if we adopt Judge Fletcher's concurrence in the case whose name I mispronounce every time. Jefferson, yes. I think that that's, unless the court were to adopt that position, I think the court's going to have a hard time under FIOLA importing the mens rea into the conspiracy. Remind us what FIOLA holds. FIOLA is a case that involves assault on a federal officer. The Supreme Court first holds that for the substantive offense, the defendant does not have to know that the victim is a federal officer. So then the defendant's alternative argument is, well, at least for conspiracy, we would have to know that the defendant is a federal officer, because in order to agree on committing the offense, we would have to know that. And the Supreme Court says, no, the mens rea for the conspiracy offense is what the mens rea is for the substantive offense. And that's why I think that argument is tougher based on that case, to be frank. However, if I were to have my day, this court would adopt Judge Fletcher's opinion in Jefferson so that mens rea would apply both to substantive and conspiracy. But I am going to assume that that's. Why in this case, though, doesn't, shouldn't we review 841A and 841B as together defining a whole bunch of different offenses, right, predicated toward the type and quantity of drug involved? And if we do that, which I think we have to under Apprendi and Alene, then the object of the conspiracy, if the government wants to trigger these heightened penalties, the object of the conspiracy has to be defined in terms of not just you conspired to distribute a controlled substance, but the specific drug involved and the specific quantity. So I guess I don't see FIOLA as being analogous, because we're talking about trying to define the object of the conspiracy in terms of what offense you agreed to commit. And there are probably 50 different offenses embedded within that statute. I would be happy with that test. If the court wants to go there and doesn't think FIOLA is controlling in this instance, then I have no problem. I have no problem with that. Well, I appreciate your honesty in discussing that. And I'm wondering if your answer would be the same, because I understand the government's argument to be that the plain text of the statute only requires that a specific drug type and quantity be involved in this conspiracy in order for any one defendant to be subject to the increased penalties. How would you respond to that? Well, I think there are several responses. First, just focusing on that word involved, I think the government thinks that that word is much clearer than it really is. Second, virtually every circuit has specifically rejected that approach. Third, the Supreme Court has basically rejected that approach in Honeycut very recently in 2017. This court, of course, has also rejected that over the course of several decades. It's a horrible test. I mean, it's just not a fair test that somebody who would be involved in a minuscule marijuana deal, but because the entire conspiracy that they had nothing to do with is all of a sudden going to be punished with a minimum of ten years in potential life imprisonment. It's just a horrible test. It's unfair. And the government itself says that they don't even really buy into that test because they don't charge cases that way. So why would this court adopt a test that the government doesn't even itself believe in, and every court has basically rejected? I guess I'm wondering how, assuming that the Kate Fiola, I guess, is controlling here, and so assuming that the government doesn't have to prove the mens rea, but how can the defendants be protected by the quantity amount in terms of what's required under Apprendi, but then still not, because here you have this, the Mexican mafia, obviously, there's a lot of evidence here that they're highly organized, and whether people believe it or not, but they talk about what certain people do and what appears to be a huge enterprise as far as that goes. And so if someone enters into that conspiracy, but maybe they only distribute less than what those amounts are, and I'm sure that the defense counsel would then argue that, okay, well, they only distributed less than this amount, and how could they ever charge a conspiracy that distributes and brings drugs into all the prisons, in and out, and it's clearly large on its face. How do we get the Apprendi, but then go along with not making that they still, it's still the crime of conspiracy? What would the jury instruction look like? I'm totally, you know, it's, I've given a lot of jury instructions, and I'm just totally confused about how this would, I see what you would want to do, I see what they would want to do, but how do we make it fair to the defendants but still can have a conspiracy? Well, and what I think the jury instruction would look like is it would look a lot like 1B1.3 and some of the commentary to 1B1.3. And I think that that instruction is both fair to the defense, it cabins a defendant who may not be involved in a far-flung conspiracy that involves enormous quantities of drugs if they just have a more focused and discreet role in that conspiracy. They're only going to be punished based on that role in the conspiracy. But it also gives the government flexibility for those people that are more involved and they can prove are more involved to be held accountable for higher quantities. And the court would just instruct the jury. Well, but what I guess if drug conspirators sign contracts, which I know that they do not, but let's say they signed a contract and say, I'm going to be involved in smuggling in and out of the prisons and I know that it's going to be amounts that are above the highest levels. Could then you just enforce the contract of the conspiracy? You know, I don't, I'm just not seeing it as quite right that even though someone's, they know that they're involved in smuggling in and out of the prisons, but their own part is only just a little bit of what they know to be a larger part. How would the government ever prove that? Well, they would prove it. How they would prove it or how the jury should be instructed are two different things. As far as the actual instruction itself, I mean, I think there's language. I just don't see under that instruction how that person could ever, even though if they knew they were in a big organization, but their part was just this much, but they knew the organization was that much, they could never be responsible for the larger amount. Well, if I could just read this one part of the commentary, which I think addresses it. It says, the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. So I think that's what we're talking about here, is that the government could, I mean, they're likely not going to have a contract that says I agree to do this, but if you look at either what cooperating witnesses may say the particular defendant agreed to or was involved in, or if you have recorded conversations, which like they had in this case that maybe reflect what the defendant knew and agreed to, and then you have actual conduct, you take all of that and determine what the defendant's role is in the conspiracy and what drugs he's held accountable for. Under Pinkerton, they would be, the defendants here, in fact, would have been chargeable with the substantive offenses committed by any of the other conspirators that was reasonably foreseeable in the furtherance, et cetera, but they weren't charged with substantive offenses, were they? No, they were not. They were only charged with conspiracy. Correct. Can you help me by pointing to the language in the statute? There's three statutes or three sections of the statute at issue. There's 846, there's 841A1, and then there's the 841B portions at issue. Can you show me where you think the language that you suggest for the jury instruction, where it fits into the statute? Well, I think there's language when you look at the statutes as a whole that indicate that it's a defendant-specific inquiry. Okay, so I'm looking at the language of the statute, and you know, some judges start with the statutory language, and I'm trying to understand your theory about where that language fits into the statute. Okay, well, if you start off with 841B, and you start at the beginning, it says, except as otherwise provided in a few sections, it says, any person who violates subsection A of this section shall be sentenced as follows. Now, that any person language is focusing on a person-specific inquiry, and the Supreme Court in Honeycutt emphasized that any person language in determining that accountability is more personally focused, it's not conspiracy-wide focused. If you also look at 841B, if you look at later on, But that any person is any person who violates subsection A, so are you relying on what Judge Watford was mentioning, that under a lane, an apprendi, each fact that has to be proven for an enhancement creates a separate offense, is that correct? Yes, in a way, and I'm just focusing on the words person, that you're looking at the person's liability, not the whole conspiracy's liability. It goes on to say that you sentence such person in the following ways, and then it talks about the person's prior record. I don't think anybody suggests that if a co-conspirator has a prior record, that one defendant is held accountable for another defendant's prior record in the conspiracy. This is a statute, if you look at the language, that is focused on the specific person's liability and record. It's not looking at what everybody in the conspiracy possibly could be held accountable for and what their prior records are. This is a rather strange statute, at least in my experience. It says if you commit the conspiracy, you'll be punished the same as if you committed the substantive offense. At least that's the language it brings us here. Does that language bear on your interpretation of it? In other words, normally, in order for a conspirator to be held liable for a substantive offense committed by others, we apply the Pinkerton test. Here, the statute makes, without anything more, seems to make the conspirator liable for the substantive offense. That seems like an unusual statutory scheme, and I'm wondering how that goes into your argument. Well, I do agree the scheme is, number one, unusual. Number two, this court is in an unusual situation, because Your Honor is asking what language is in the statute that says this. But the reality of all this is that Congress never intended for a jury to be instructed on drug type and quantity. All this was supposed to be determined by the judge at the time of sentencing under the sentencing guidelines. But then along came Apprendi and said, you can't do that anymore. So we're now trying to come up with what Congress would have intended had it known that this was the way the scheme was going to be. And what Congress did know at the time it passed this statute, to the extent that Congress knows anything, we presume Congress knows things, is that in order to make a conspirator liable for the substantive offense, to punish the conspirator as if he had committed the substantive offense, you needed to meet the Pinkerton test. And so one way to read this statutory scheme is to say, having adopted that result, Congress also adopted the test. That's correct. But I would like to refine that a bit. Our position is that the conjunctive test is a Pinkerton test. Right, yes. It's just a narrow interpretation of the Pinkerton. I'm sorry. I'm using shorthand. I'm using Pinkerton test to use what you're advocating for, as opposed to the disjunctive instruction. Right. But I want to be clear that, number one, Pinkerton is not just reasonable foreseeability. That's what tends to happen is people say, well, there's Pinkerton liability. All it has to be is reasonably foreseeable. That's not what Pinkerton is. And the language in Pinkerton, it's basically the last sentence or two of Pinkerton, is a conjunctive test. And what the guidelines have done is they've – Can you help me, counsel, with the actual jury instructions in this case? Do you have any quarrel with jury instruction 31, which is the standard instruction on conspiracy? In particular, I point you to the language that you must find beyond a reasonable doubt that there was a plan to distribute either methamphetamine or heroin. Do you have any quarrel with that particular instruction? Or is it really 32 and 33 that we need to be focusing on because that's the disjunctive test that was given? I think we're really focused on the latter. I mean, obviously, I do have a quarrel to the extent that, in my ideal world, the court would adopt Judge Fletcher's concurrence in Jefferson and then the type of drug would be an issue. We'll get to 32 and 33, but I just want to kind of looking at it as a practical matter to instruct the district court and to inform the parties as to how to actually try these sort of cases. The standard Ninth Circuit model jury instruction on conspiracy matches with the way that the directed verdict form was filled out, which is that we, the jury in the above entitled cause, find the defendant either guilty or not guilty of conspiracy to distribute methamphetamine or heroin. So that in and of itself is sufficient to answer the directed verdict as to whether a defendant is guilty of conspiracy. Would you agree with that? Yes. Okay, now, so let me get to jury instruction number 32 that gives the disjunctive test of reasonably foreseeable to him or fell within the scope of his particular agreement. You had a discussion with Judge Hurwitz about the fact that reasonably foreseeable, that concept is really a Pinkerton-adopted concept. If we were to delete reasonably foreseeable and merely tell the jury that, okay, if you find the defendant guilty of conspiracy to distribute either meth or heroin, you have to find with unanimity and beyond a reasonable doubt that it fell within the scope of the defendant's particular agreement. Would that be sufficient in your view? Yes. It also would have to be in furtherance of the agreement. Right, right. I'm trying to figure out what reasonably foreseeability adds to jury instruction number 32 and number 33. Now, you might want further clarifying instruction on what it means to fall within the scope of a defendant's particular agreement and in furtherance of the conspiracy, but in the context of a conspiracy-only case, I don't see what's really gained by adding the reasonably foreseeability language that's imported from Pinkerton. I agree with you. I don't think it adds a lot. There could be a hypothetical-type case where maybe that would matter, but typically I think when you look at, you know, especially if the court were to give some of that additional language about jointly undertaking activity that I would like in the instruction, that the reasonable foreseeability part of it is not going to add a tremendous amount. All right. Well, if it doesn't add anything, is it problematic in any way? In other words, does it reduce the government's burden of proof or is it just some extraneous language that really gets to the same point, which is that it's reasonably foreseeable, it falls within the scope of his agreement, he must have intended, he knew the object was to distribute either meth or heroin, he knew that that's the type and he knew that this is the amount? Well, is it – if we add and, does it – is it the same in your view as omitting reasonably foreseeability altogether? Well, I guess here would be the hypothetical or the reasonable foreseeability may matter in fairness to the government. Let's say you have a blind courier, okay. It's someone who has agreed to take drugs from point A to point B. They've made an agreement to do that. For whatever reason, they're not charged with substantive possession. They're just charged with conspiracy. The government would probably want to be able to argue that they're jointly – the scope of their jointly undertaken activity is to drive this car full of drugs from A to B. And it was reasonably foreseeable that it would have this quantity of drugs. So in that context, if the defendant was only charged with conspiracy, the reasonable foreseeability may matter. So that's out of fairness to the government. And that's what we're trying to do is have a standard that is fair both to the defendants who aren't held accountable for quantities that they have absolutely nothing to do with, have no knowledge of that are occurring before they're even involved in the conspiracy, and given some fairness to the government to be able to vigorously enforce the drug laws. So that would be a hypothetical perhaps where that language would matter. But at the end of the day, we believe it's not just simply reasonably foreseeable. It has to be a conjunctive test that incorporates their jointly undertaken activity, their agreement as their jointly undertaken activity. And if the government wants that reasonable foreseeability language in there, then in fairness they can get it. And that would be consistent with Pinkerton. What if anything prevents us from adopting the position that I took in Jefferson? Nothing. Good. Would you like us to do that? I would absolutely love the court to do it, and I think the Supreme Court in Rehafe specifically endorsed exactly what you said. And that would make this a whole lot easier. I think so, yeah. Maybe even fairer to the defendants. And it would be a lot fairer, absolutely. So there's nothing preventing this court from doing it. And there's a Sixth Circuit judge, I believe it was Judge Merritt, who agreed with you as well, Your Honor. So that would really clarify and eliminate a lot of confusion. So I would fully support the court doing that. But if the court is not going to do that, I think at a minimum it should adopt the conjunctive test. Again, this is a test that's existed for almost 30 years. Congress has repeatedly approved of the test. There's no reason not to have this test that's been specifically in existence for decades and has been approved repeatedly. Has any other circuit adopted? I know you say there's one judge in the Sixth. I couldn't find any other circuit that's adopted the position of Judge Fletcher's concurrence in Jefferson. Am I right? You are correct, but I don't believe there have been. That doesn't mean that he's right. I'm just asking a factual question. That's correct. I also don't believe there are really any other circuits that have really, number one, analyzed the issue in any great depth, and number two, have looked at it since Rehafe. And we think Rehafe is a very important case in this area because what the Supreme Court said in Rehafe is that the presumption, and this is a strong presumption, is that mens rea applies to all material, all material elements of the offense.  So that argument would be independent, I take it, of the post-Apprendi treatment of quantity and type as elements, would it not? In other words, would you make that argument with respect to the crime before Apprendi and Allain? Well, certainly the argument is not as strong before Apprendi because they weren't considered to be elements. I get back to the point that one of my colleagues raised, was that when Congress passed this statute, it really didn't think these were elements of an offense. It thought they were sentencing factors. So I'm trying to figure out under those circumstances how vigorously we should apply a presumption that Congress meant mens rea to apply to all parts, all elements of the crime. Well, I mean, it seems to me that, and this was, I mean, in Buckland, which was a case that was argued almost 20 years ago, one of the things that we as a defense community were arguing is that if you're going to make these elements and you're just going to start making stuff up contrary to what Congress intended, you're then going to have to deal with all these other issues and you're going to have to make them up. And I think that consistently, to be fair, you need to be consistent. If these are now elements, then the normal presumptions should apply. And to say, well, we're not going to apply the presumption because, you know, we're not sure that that's what Congress would have intended. We've gone down this course now, and this is the course that the- Let me give you an example that's troubled me in this, because I'm sympathetic to your position, but I'm having difficulty with it. Let's assume that a murder statute says it's an aggravating factor, transforming murder into capital murder if you kill more than one victim. You only intend to kill one victim, but you end up killing three. Do we import into that aggravating factor the mens rea that was required for the only crime for which you were charged, the killing of the one victim, and require that the state prove that you intended to kill the other two? Well, I need to- I'm not sure. I might have lost the hypothetical. So this is a- It's really simple. In order to convict somebody of first-degree murder, you have to show that he acted with premeditation. Correct. You're charged with murdering somebody with premeditation, and the jury finds you guilty. Right. The aggravating factor alleged is that when you committed that crime, you killed two other people. Therefore, you had multiple victims. Do we import the mens rea from the basic crime into the aggravating factors? It would strike me that we usually don't, and that's why I'm having difficulty translating this one into the Jefferson situation. Well, I guess the first thing is I'm going to assume from your hypothetical that the person wasn't, I guess, death penalty eligible. Oh, yeah. The only death penalty eligibility is multiple victims. Okay. So at that point, I mean, you would obviously take a look at what the legislature, and assuming we're dealing with Congress- But we're dealing exactly with the same circumstances. These were sentencing factors until Ring. Okay. My favorite case. And now there are elements. Now there are elements. And before Ring, nobody required you to prove mens rea as to the other two victims. It just said they counted up the victims that resulted from the crime. You're now saying we must show first-degree murder, mens rea, as to those additional two victims? Well, obviously, you know, usually these are state, the same presumptions may not apply to state courts. But let's assume it's Congress. So we got the same common law presumptions. I would say yes. You would if it's now an element of the offense. That would be the presumption. Now they can rebut the presumption. They can come forward and say, look, it's completely clear that that's not what Congress intended in this case, and maybe they have legislative history or something that would rebut it. But if you don't have anything to rebut the presumption, then the presumption should apply. And that's all we're saying. No one is saying that- hypothetical. So an individual was charged with conspiracy to commit first-degree murder, may or may not have had a role in the actual murder, and two other people died. How do we analyze that? Well, if the mens rea applies to the substantive killing of multiple people, then it would also apply to the conspiracy. If it doesn't apply, if there is no mens rea as to the substantive killing of multiple people. And why is that if the defendant never agreed to kill more than one person or to have more than one person be killed? How does that affect the conspiracy count, the fact that two people accidentally died? How would you analyze that? He's only being charged with conspiracy. His agreement was only as to the murder of one person, but two other people accidentally died. And that becomes an aggravating factor for purposes of sentencing. So how do you deal with that one? If it was the way that I like to interpret conspiracy law, well, the defendant would have to agree to the additional victims as well. Theola may say something different as to that, but I think that there's certainly- it makes sense that the defendant, if he has to agree to it, if it's a conspiracy and he has to have that agreement, that he would have to agree to the other two victims. Theola seems to say something a little bit different, but Theola, you know, there was a- it involved an arguably jurisdictional element of the offense, and there may be ways to distinguish Theola in that regard. And it wasn't dealing in a death penalty situation or a murder-type situation where there may be other common law principles that would elucidate what it means to conspire in that context. You're down to two minutes. Yes, please. Thank you. May it please the Court, Daniel Zip on behalf of the United States. Your Honors, the parties in this case both agree that the current disjunctive formulation from Banuelos no longer provides the appropriate limitation on co-conspirator liability. And we acknowledge that most circuit courts to address this issue, including every circuit court since Eileen, has held that there is some sort of defendant-specific limitation on offense amount and type. The problem is that the specific limitation that's been adopted by all of the other circuits has either been a Pinkerton theory of liability or an importation of the relevant conduct language from the guidelines. And neither of those two approaches is appropriate here or is consistent with the plain language of the statute itself. Can you just explain to me, just so that I just want to understand this contextually, why, as a prosecutor, would you want to just charge the conspiracy without charging them with distribution crimes in between on the co-conspirator liability? Because this is different than if... I mean, there are situations where you could have charged everyone with all of these crimes, all these distribution crimes, and then had the Pinkerton instruction, and that would have been easy enough. But here, the Pinkerton instruction is a little bit different than the conspiracy instruction. So how do you charge the conspiracy but then make sure that you have complied with Apprendi? I think if I understand your question correctly, the reason is that, as the Supreme Court held in Shabani, in drug conspiracy cases like that, there doesn't have to be a substantive offense. There is no overt act requirement. And there could be situations where a group of defendants conspire to distribute drugs, and we see this on a regular basis in wiretrap-type cases, where there are no drugs on the table. And you have agreements. You have agreements as to certain amounts and other parties agreeing to certain amounts. But in that situation... Let's say you had the agreement to all of that, but nothing was ever distributed. Then you would have the contract would say that they agreed to distribute more than that amount, and so therefore you've complied with Apprendi? Yes, under the treaty... But they never do that. You always have transactions. As a practical matter, you always have transactions before you actually... I haven't seen a situation where it's just been an agreement and nothing ever happened. There are certainly cases where there are specific defendants. In a large case like this, there might not be drugs on the table. Some of them might not have done something, but it's hard to imagine a trial of this magnitude where there would have been no drug transactions. Certainly. That's not a typical case that would be brought. But it doesn't change the fact that the conspiracy itself, the agreement, is the inchoate offense entirely separate from the underlying... What's the advantage to you to being able to charge a conspiracy without having to charge substantive offenses? Well, one advantage under this statute is if you prove the conspiracy, you've in effect convicted the defendant of the substantive offenses, correct? Yes, that's a great answer. That's why this statute is so troublesome. Well, no, I think... To go back to your question, like I said, there could be situations where there aren't specific drugs on the table. And I would make the point that we're not advancing this position here because this is how we want to go out and start charging cases and hammering people with mandatory minimums based on drug amounts that aren't even foreseeable to them. This is not how the United States charges its cases, at least post Eileen, since 2014, across all of the circuits, even those that have a conspiracy-wide state of the law. It's the Department of Justice policy to only charge reasonable foreseeability, so... I'm confused from your briefing, and you can help me. What do you think the... How do you think the instruction should read to respond to Judge Wynn's questions? They say it should be a conjunctive instruction, not the disjunctive instruction. What is the government's position? How should the instruction read? I guess there's two parts to that answer. The government's current position as a policy of how it charges these cases is to apply a foreseeability standard in line with Pinkerton and in line with relevant conduct. I understand that. That's not what I'm asking. You're arguing, I take it, either that there was error in this case or not error in this case. And so my question is, if the correct instruction had been given from the government's standpoint, what would it have said? The most intellectually honest interpretation of the statute in this case would impose liability for the entire conspiracy itself. So the jury instruction would say, are you guilty of conspiracy to distribute a controlled substance? And if so, did the conspiracy as a whole involve more than 50 grams... But doesn't that type of instruction pose the very dangers that Pinkerton warned against, given this particular statutory scheme, which is that you might hold... There might be some due process problems in holding somebody with only a very minor role in the conspiracy liable for things he neither agreed to nor could have foreseen. That's why Pinkerton imposed that restriction on translating conspirator liability into substantive liability. So my problem with that intellectual position is it has a due process problem, doesn't it? No, I don't think so in this case, Your Honor, only because what Pinkerton is addressing is the substantive violation... I understand it addresses a different question, but what Pinkerton is premised on is the notion that a conspirator who agrees to enter into a conspiracy, it would violate due process. It wouldn't give him fair notice if he didn't know all the consequences of that conspiracy. So Pinkerton said one of the consequences is you'll be held liable for a different crime, a substantive crime, if you could have reasonably foreseen it and it was within the scope of the conspiracy. So my question still is, isn't there a due process problem with a pure strict liability instruction,  is intellectually required? We don't believe that there would be, Your Honor, only because we're not, again, talking about substantive offenses themselves. I know we're not, but why is a defendant put on fair notice of the consequences of his crime from a statute which says you'll be punished for whatever other people may decide to do later even if you didn't know about it? How is that fair notice? I think there's a difference between... Again, the Supreme Court has recognized over and over again that the act of the conspiracy itself is an evil unto itself and for many reasons is in fact more dangerous than the substantive offenses. So to the extent that there's a due process concern with attributing substantive offenses to a conspirator, that same... Are you aware of other federal statutes that punish the conspiracy more strenuously than the substantive offense? Let me... I... Offhand, I don't... Could I ask about the... Could I just squeeze in a question here just to get back to Elaine and Apprendi and the... which says that these enhancement components, however Congress may have originally intended them, create separate offenses. And so if the offense here is an agreement, it's a conspiracy, an agreement to distribute, why is it that the agreement with these 841B elements has to be an agreement to distribute a certain quantity and a type of drug? Isn't that the natural implication of Elaine and Apprendi? And if not, help me understand why. Why the agreement itself has to be to a specific drug amount? Since the offense is conspiracy, which is an agreement, and the agreement would be the agreement to distribute any quantity of drugs or a type of drugs as long as it's controlled. But then there's these enhancement statutes which create new crimes according to Elaine and Apprendi. So why doesn't the agreement have to be to an agreement to distribute a certain quantity of heroin or a certain quantity of meth? Well, I think the fact that the Supreme Court has described these as elements in the Sixth Amendment sentencing context, as this Court recognized in the majority opinion in Jefferson, doesn't serve to import a mens rea to that element of the conspiracy that wouldn't otherwise exist in the underlying offense. In other words, if the object of the conspiracy is the A-1 offense of distributing a controlled substance, then the statute itself says that you're on the hook for any amount of drugs that are involved in that violation. So just as a drug mule at the border with 50 kilograms of methamphetamine in his gas tank is guilty for the full amount of those drugs and can't present a defense that I didn't know what the drugs were and therefore I'm not a subject... That's the underlying substantive offense, though, not the conspiracy. Right, and just as that's the underlying offense, if that same defendant was recruited by another or another group to do that, the same rule should apply to them, that they can't simply say, well, I didn't know what the specific drug was going to be. If what they're being held liable for is their agreement. Well, I think because, as apparently my opponent agrees, the Supreme Court held in FIOLA that the mere fact that a substantive offense is charged as a conspiracy doesn't serve to import those specific mens rea elements from the substantive offense into the conspiracy offense. Why can't there be something... Okay, but let's say I agree with you on that, but then I'm still not convinced that you have to do something about the Apprendi issue. And I understood the appellant's lawyer at first to say, well, I mean, he moved... As things seem more favorable, possibly of a couple of other options, saying I would love to have it that way. But he said, okay, but I think I'm on really solid ground here. He said, no, FIOLA says you can't change what conspiracy is. You can't bring in the substantive offense mens rea. But there's still... How then, if you assume that, how then can you satisfy Apprendi? Is there a way to satisfy Apprendi separately from that? You can find him guilty of conspiracy, but what then? Can you give me an instruction so that... I think it would be simply consistent with the bifurcated approach of A1 and B, would be to have the jury find beyond a reasonable doubt that the defendant was involved or committed the conspiracy, and then have the jury find beyond a reasonable doubt that the conspiracy itself involved more than the triggering drug amount. Beyond that, there's nothing in the language that would suggest... And no foreseeability there. You said the government always charges things where there's some foreseeability. That's correct. That's our policy, but... So how would that instruction look? It would be... The way we charge it now is effectively what defense is asking for. Okay, that's what I was just going to ask. So if we reject your intellectually honest position, as you say, we should adopt the position that your opponents recommend, which is the conjunctive? Yes. I don't think there's support for that in the statute, but if the court adopted that, it's not going to change much in the real world because for five years, we've charged it that way in all cases across the country. So why have you charged it that way if you didn't think the statute supported it? Your Honor, I think that... Not out of generosity of spirit. It's because a bunch of courts have found that the statute required it, correct? Right. I think once a critical mass of courts adopts this position, then just from a prudential standpoint, when you have cases like this that a month-long trial and a huge amount of resources to go into it, to the extent that there's uncertainty about what the standards should be... What troubles me about this case is a month-long trial. This is your position consistently. They seek an instruction consistent with your position across the country. You all say... You all object to it. The district court gives a different one. And now we're here trying to resolve it. Why not just agree with them when they propose the instruction? Your Honor, I think it's more nuanced in this case. We all along in this case agreed with a defendant-specific limitation. Right. But you didn't agree with and. Right. And we simply followed the court's model jury instruction based on existing law in Vanuelos. Based on the previous version of the guidelines. Correct. But, again, that was the model jury instruction. It's not that we were not staking out some sort of extreme position here. My problem with this case is that if you had simply said we agree to and, we would have had a jury verdict. We wouldn't have to have 11 judges dancing on the head of a pin here and so it seems to me in order to maintain an intellectual position, perhaps, the court's now been put through this entire burden and I'm not sure for what good end. Well, again, just I would stress that as a factual matter in this case. I know it's not you. I know it's the Justice Department. We adopted the model jury instruction. All the parties agreed on the model jury instruction. It was only after the jury had already gone out and begun deliberating that this issue even came up and the court gave a sort of quick read to a couple of these cases and decided to stick with the model jury instruction. So, again, the position that we're advocating here today is based on this, what we understand this court to be asking which is if we wipe the slate clean and start over and look at what the statutory language says, what is the limitation on co-defense? Can you tell us why, can I ask you, why was I wrong in Jefferson? Your Honor, I think if you look at the structure of how Congress enacted 841A and B, the knowingly mens re element only applies to the section A1 element of the offense. Just the structure of the statute includes two separate subsections. And in your view or in your argument, the identity of the drug is not an element of the crime? It's not, Your Honor. And the quantity of the drug is not an element of the crime? No. And that has the consequence, if you read it that way, that you can get a mule who testifying truthfully, I will assume for purposes of my question, says, I was told it was marijuana, turns out it's meth, and you get to punish him as meth, and it spares you an awful lot of work in terms of proving what that defendant actually knew. That is the... I mean, he's shooting fish in a barrel as soon as you catch him with whatever it is. I would disagree with that, Your Honor. I think as a practical matter at the border, a lot of defendants claim to not know  Well, of course they do, yes. But I think if you look at the plain language of the statute, as this Court and all 12 circuits have held, the mens rea element of knowingly only applies to the distribution of the controlled substance. It doesn't care... Can I ask you this about the conjunctive, disjunctive issue? It sounds to me like you're agreeing with your opponent that effectively, conjunctive is the way to go, but we have case law that says that conjunctive is to the contrary. But is it the government's position that since you followed Banuelos and Banos and so on, or Banuelos, that basically this is harmless anyway because everybody knew what was required here and it doesn't really matter whether it's conjunctive or disjunctive in this case? Yes, Your Honor. And that was why  even holding en banc argument in this case. I think if you look at the facts here, whether they were charged in the conjunctive or the disjunctive is a different matter. The facts of this case would have shown that all five of these defendants, as part of this Mexican Mafia conspiracy, the relatively modest amounts of 50 grams of amphetamine or 100 grams of heroin would have both been foreseeable and within the scope of the overall conspiracy. From your perspective, were we to rule on the issue that your opponents     to reach that because it's a harmless error as to these defendants. I don't think that's the case. I don't think that's the case. I don't think that's the case. I don't know if it would be dicta if the court is sitting en banc to interpret the statute that way directly. But certainly from a harmlessness standpoint in this case, not only was the evidence sufficient to show that all of these defendants it was reasonable, foreseeable, and within the scope, but all of the defendants  were also separately convicted of a RICO conspiracy. The jury made a separate finding without the disjunctive language as to the drug amount that was that was that was that was the knowledge involved in that RICO conspiracy and it subjected them to a life sentence. In addition, two of the defendants, Rodriguez and Delgado, received sentences below 20 years so that even if there was no drug finding at all, it wouldn't have made a difference in this case. Wouldn't it make sense to If we overrule If we overrule Becerra and Banuelos   Does it work? Ultimately, from our standpoint, we would like to confirm that the defendant was convicted of a RICO conspiracy and the defendant was convicted of a RICO conspiracy In other words, it sounds to me like you don't you don't have a problem with our overruling Becerra and Banuelos but you also feel that it would make no difference in this case because of the specific facts that you've recited. Correct, Your Honor. Ultimately, if this court were to affirm all of the sentences in this case, adopt some sort of disjunct sorry, conjunctive formulation consistent with how we charge these cases here and in all across the country, that would be a favorable outcome for us. In the conjunctive way, anyway, regardless of what these cases say. That's correct, Your Honor. Should this panel make the harmless analysis or should it be remanded to set the standard here send it back to the three-judge panel to dig more into  error analysis really means that you have to look at the whole trial transcript. This has been a fairly focused discussion. The the the the the the the    7 facts out there. But I think that's more of a procedural matter for how Court considers it. I would submit that all of the records have been transferred to the court. Given the fact that they were convicted of a RICO espiracy with a life cap and that it wouldn't make a difference in this case, I'm not sure it would be necessary to send it back to the panel to conduct that analysis again. I'm happy to answer any other questions the court might have. Thank you. Thank you. I have a few quick points on the conjunctive test. I want to discuss FIOLA quickly in the agreement element and a few comments about harmless error as well. First on the conjunctive test, what the judges do is say assuming you reject our conspiracy-wide approach, we agree with the conjunctive test. They start using slipper ly language. They start talking about the whole conspiracy again. The whole point of the conjunctive test is it's not just reasonably fair.  the specific defendants jointly undertaking activity. They get slippery there. If the court is going to agree with us on the conjunctive test, it should be clear it's articulated in the sentencing guidelines. It's the specific defendants jointly undertaking activity. Not the conspiracy as a whole. As far as harmless error, I think it's better to send it back to the three-judge panel. Not all the defendants were convicted of the RICO conspiracy with a life cap. Rodriguez was not convicted of the RICO conspiracy with a life cap. I will say this briefly. The error was not harmless. He received less than 20 years. The Supreme Court has twice said it's harmful error if the judge is not starting off with the correct range. The judge has to start off with the correct range. For example, Rodriguez was doing that based on a range of five years to 40 years. Had the judge known that the range was only zero to 20 years, he may have given him a sentence. It looks at the statutory range. If the judge realized that it was zero to 20 years, he may have said I would rather give him ten years. In this case, he went closer to the bottom of the range. If the range shifted down, he may shift down as well. Finally, on the issue of the agreement, we agree with Judge Fletcher that these are different cases. The court will have to distinguish Fiola. I think there are ways to do it, but that is a case that will have to be addressed. Thank you. Thank you, counsel. Thank you both for your arguments this afternoon. We will be in court for  session. This court for this session stands adjourned.
judges: Thomas, W. Fletcher, Callahan, M. Smith, Ikuta, Nguyen, Watford, Hurwitz, Miller, Bade, Bress